IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANICE R. MILLER, individually and as Administratrix of the ESTATE OF BARRY JACOB MILLER, | : CIV. ACTION NO. 3:20-cv-00091-SLH |
| Plaintiff, | : |
| v. | : |
| THE HEIL CO. | : |
| Defendant. | : |

### DEFENDANT THE HEIL CO.'S MOTION FOR RECONSIDERATION

Defendant, The Heil Co., (hereinafter referred to as "Heil"), by and through its undersigned counsel, submits this Motion for Reconsideration and avers as follows:

1. Heil, by and through its undersigned counsel, hereby seeks reconsideration of this Court's Memorandum Order of March 11, 2022 (ECF No. 62), wherein this Honorable Court denied Heil's Motion to Compel production of Mental Health Records withheld as privileged (ECF No. 49) and submits the following in support of said Motion for Reconsideration. A true and correct copy of the Court's Memorandum Order of March 11, 2022, is attached hereto as **Exhibit A**.

2. To reiterate the substance of the underlying Motion, Heil contends that Plaintiff's privilege claim as to approximately 631 documents of the Decedent, Barry Miller's mental health records was over- broad, obstructive and not in keeping with this Court's Memorandum Order (ECF No.: 45) as well Heil's Motion to Compel Execution of Authorizations (ECF No.: 23).

3. Pursuant to that Motion, Heil had requested that the Court order Plaintiff to produce the withheld records in their entirety, or alternatively, that the withheld records should be subject to *in camera* review and a document by document evaluation by this Court or a Discovery Master.

4. The Court per Memorandum Order found that Heil had failed to show Plaintiff had waived any privileges that may attach to the withheld records under Pennsylvania's Patient's Psychologist/Psychiatrist Privilege, 42 PS § 5944 and Pennsylvania's Mental Health Procedure's Act ("MHPA"), 50 PS § 7111.

5. Accordingly, this Court denied Heil's Motion to Compel Production of the aforesaid mental health records withheld as privileged (ECF No.: 49).

6. This Court added as an additional point that its denial was without prejudice insofar as it may be determined that discovery of the withheld records is necessary based on specific evidence Plaintiff seeks to introduce at trial and that such necessary information is unavailable through other means.

7. In its Memorandum Order, this Court indicated that "the Court will address the need for discovery of privileged records with the parties at the post-discovery conference, as at that time, the parties should be better able to address the need for such records based on the evidence adduced during discovery."

8. As was argued in its Motion, it is Heil's position that the withheld records are relevant and critical to its defense of the case and that its damages defense is impaired and prejudiced by Plaintiff's refusal to produce these records (ECF No.: 49-2 at page 5) and further contends that without additional and complete documentation regarding the decedent's success or failure during his time in various treatment programs, such as Adelphoi Village and ACRP, and/or under the care of various medical providers and/or while attempting to learn skills at a vocational

institute, Heil cannot construct a full picture of Decedent's ability to hold and maintain employment for several additional decades.

9.     This Court, in its Memorandum Opinion of March,11, 2022, and in setting forth grounds for denying Heil's Motion to Compel, indicated that Heil has "again failed to articulate how the withheld records (the majority of which appear to be 2015 mental health treatment records relating to a time period three years prior to Miller's death in 2018) would contain such information or any other information relating to specific claims or facts placed at issue in this case by Plaintiff." (Memorandum Opinion , March 11, 2022, at 6).

10.    Importantly, this Court cites the case of *Octave ex rel Octave v. Walker,* 103 A.3d 1255 (Pa. 201) as support that "… Defendant has not shown that the information it allegedly needs to address Plaintiff's damages claim and prepare its expert reports is not readily available by less intrusive means, such as through deposition testimony or written discovery." *Id*.

11.    Pursuant to this Court's direction and in an effort to obtain this information in a less intrusive manner, the deposition of Plaintiff, Janice Miller, Decedent's mother, was taken on May 6, 2022.  A true and correct copy of relevant pages of testimony from the Transcript of Plaintiff, Janice Miller, taken May 6, 2022, is attached hereto as **Exhibit B**.

12.    Per her own testimony, no one in the Miller family knows more about Decedent's medical treatments than Ms. Miller herself:

> Q. Were you the primary point of contact between Barry, Jr., and his medical providers?
> A. Yes.
> Q. Is there anyone in the family that knows Barry's medical, you know, treatments better than you?
> A. No.

*Id.* at pg. 51.

13. Despite this, as evidenced in her deposition testimony, Janice Miller had little actual recall of what transpired at any of the mental health facilities in question.

14. Regarding Decedent's admission to Conemaugh Hospital for a ten (10) stay starting October 1, 2008, Ms. Miller had no recollection regarding anything being discussed with Carole Serbin, the counselor at Conemaugh, during this time.

> Q. Do you remember anything specific about what was said in any of the counseling sessions?
> A. No.

*Id.* at 57.

Ms. Miller did identify a Dr. Oandasan, but indicated that she had no knowledge of anyone providing actual counseling during that ten (10) day stay:

> Q. Do you know what doctors treated him at Conemaugh in October of 2008?
> A. Yes.
> Q. Who would that be?
> A. Dr. Oandasan.
> Q. Anyone else?
> A. Not that I know of.
> Q. Do you know if that doctor – I apologize if I asked this before: Is she a psychiatrist?
> A. Yes.
> Q. Do you know if Dr. Oandasan provided any counseling?
> MS. JENSEN: At that time you mean, Mike?
> Q. Yeah, at that time, during that ten-day stay.
> A. Oh, I have no idea.
> Q. Were you present for any counseling that he received during that ten-day stay?
> A. No.
> Q. Do you know of anyone who provided actual counseling for your son during that ten-day stay?
> A. No.

*Id.* at 70.

Ms. Miller confirmed that no one at Conemaugh had advised her regarding the various discharge diagnoses for Decedent following his stay, including bipolar I disorder.

> Q. The "Discharge Diagnosis" says, "1, adjustment disorder with depressed mood; 2, attention deficit hyperactive disorder, combined type; and, 3, bipolar I disorder, mixed, severe, with psychotic features." Did anyone at Conemaugh discuss with you their belief that your son was experiencing bipolar I disorder?
> A. No.

*Id.* at 71-72.

Ms. Miller confirmed that she was not allowed to see Decedent during the ten (10) day stay and that she was not present for any of Decedent's therapy sessions while at Conemaugh in October of 2008.

> Q. Okay. And do you know if your son had any therapy sessions while at Conemaugh in October of 2008?
> A. I'm sure he did.
> Q. But you weren't present for them?
> A. No.
> Q. Okay.
> A. I actually wasn't allowed --
> Q. Were there -- I'm sorry. I didn't mean to interrupt you.
> A. I wasn't allowed to see him for ten days.

*Id.* at 72-73.

15. Regarding Decedent's August 2009 admission at Conemaugh, Ms. Miller had no recall of treatment or counseling provided to Decedent during the August 2009 stay.

> Q. Other than a med change, do you have a recollection of any other type of treatment or counseling that your son received during that second stay at Conemaugh in August of 2019 [sic]?
> A. No.
> Q. Do you know if Conemaugh -- do you have a specific recollection if Conemaugh provided any psychiatric counseling at that time?
> A. I don't know.
> Q. Were -- do you recall being present for any type of counseling that your son received during that second stay in August of 2009?
> A. No.

*Id.* at 82.

16. Regarding Decedent's admission to Conemaugh in January 2012, Ms. Miller had no recollection of what this admission was for.

> Q. Do you recall him being admitted to Conemaugh in January of 2012?
> A. I don't remember the dates, but yes.
> Q. Okay. What do you recall about his admission in January of 2012?
> A. I don't remember what it was for.
> *Id.* at 99.

Ms. Miller had no recall as to the length of time for this treatment. Ms. Miller confirmed that she was not with Decedent during the January 2012 stay. Ms. Miller was not aware of what counseling Decedent received during this time period, and had no recollection of having been present for any of Decedent's counseling:

> Q. Do you know how long he was in Conemaugh for during that treatment?
> A. No.
> ***
> Q. During that stay at Conemaugh in, you know, January of 2012, were you with him every day during his stay?
> A. No.
> Q. Do you know what treatment he received during that stay?
> A. I don't know if it was a med check or what -- a med change, I should say.
> Q. Okay. Sure. I mean, but you don't know specifically what, if any, counseling he received; correct?
> A. No.
> Q. And you don't recall being present for any counseling?
> A. No.

*Id.* at 102 – 104.

17. Regarding Decedent's treatment at the Abraxis facility from July 30, 2015 to November 9, 2015, Ms. Miller noted that this was an in-patient facility, but confirmed she was not with Decedent twenty-four (24) hours per day while at Abraxis. During Decedent's stay, Ms. Miller identified counseling sessions taking place over the phone but had no recall of either the counselor, the number of counselling sessions nor had she knowledge of the day to day regimen. In short, Ms. Miller had no knowledge of exactly what treatment Decedent received at Abraxis and instead

indicated only that she knew that he received "some" treatment there from unknown and unidentified counselors. Ms. Miller had no knowledge if Decedent had seen a psychologist or psychiatrist at that facility, nor could she identify or recall the names of any of the doctors or counsellors who provided care at that facility:

> Q. Is [Abraxas] an inpatient facility or outpatient?
> A. In, inpatient.
> Q. Am I correct that, because it is inpatient, you wouldn't have been with him 24 hours a day for those months that he was at Abraxas?
> A. Right, yes.
> Q. Okay. So you don't know what treatment he received while at Abraxas?
> A. No, sir.
> Q. And you weren't present for any of the counseling, if any, that occurred at Abraxas?
> A. Yes, over the phone.
> Q. Okay. When you say "over the phone," what do you mean?
> A. We did our counseling sessions over the phone.
> Q. Do you remember the name of the counselor?
> A. No.
> Q. Do you remember how many counseling sessions there were?
> A. No.
> Q. Do you know what his, you know, day-to-day regimen was at Abraxas?
> A. No.
> Q. Do you know if he ever received treatment for drug use at Abraxas?
> A. No.
> Q. Do you know whether he actually received any mental health treatment while at Abraxas?
> A. Yes.
> Q. What treatment did he receive at Abraxas that you are aware of?
> A. I don't know exactly what they did, but I know he did get --
> Q. You are not sure exactly what they did, but you do know that he received some treatment.
> A. Yes.
> Q. But you don't know who the counselors were, or anything like that?
> A. No, I don't remember.
> Q. Do you know if he actually saw a psychiatrist or a psychologist while at Abraxas?
> A. I don't know.
> Q. Do you know any of the doctors that provided care for your son at Abraxas?
> A. No.
> Q. And if I asked this already, I apologize. Do you know the names of any of the counselors that provided counseling to your son at Abraxas?
> A. No.

*Id*. at 105 – 107.

18. Regarding Decedent's treatment at Adelphoi Village from March 9, 2015 to July 16, 2016, Ms. Miller indicated that she was not aware of her son receiving treatment at this facility She recalled Adelphoi as being a drug treatment facility at the Gateway location, but was unaware of what services were provided . Ms. Miller had no knowledge as to the nature of the treatment at Adelphoi, nor with whom her son was treating at that facility, nor the type of counseling he was receiving at that location. Ms. Miller had no knowledge as to whether he had been seen by a licensed psychologist or psychiatrist while at the Adelphoi facility.

> Q. …But there's reference in documents to an Adelphoi Village. Do you know what Adelphoi Village is?
> A. No, I don't.
> Q. Have you ever heard of "Adelphoi Village"?
> A. Yes, I have.
> Q. Okay. What is Adelphoi -- what do you understand Adelphoi Village to be?
> A. It is like a treatment center.
> Q. A treatment for drugs and alcohol or a treatment for something else?
> A. I don't know. All I know is a treatment center.
> Q. Okay. The records reflect -- even though we haven't seen them, but we have your attorney's privilege log -- the records reflect that he was at Adelphoi from March 9, 2015 to July 16 of 2015.
> A. That wasn't Adelphoi Village.
> MS. JENSEN: Let him finish his question.
> Q. I'm sorry?
> A. Go ahead.
> Q. No, no, no. You were going to say?
> MS. JENSEN: Go ahead.
> A. The only other place he was in was Gateway, which was a drug treatment facility. I don't know where the Adelphoi Village came from.
> Q. So are you not aware of him receiving treatment from Adelphoi Village in 2015?
> A. Yeah, I'm not aware of it.
> Q. Okay. So you don't know what services were provided to your son from Gateway?
> A. No.
> Q. Do you know if Adelphoi is inpatient or outpatient?
> A. Inpatient.
> Q. But you don't have a recollection of your son being at Adelphoi --
> A. No.
> Q. -- at all in 2015?
> A. No. He was placed at Gateway.

> Q. Well, our records reflect that your son was at Gateway from January 4, 2016 to May 4, 2016, and Adelphoi was in 2015 during his sophomore year. You simply just don't have any recollection of him being treated at Gate- -- or, excuse me, at Adelphoi?
> A. No, I don't.
>
> ***
>
> Q. Ms. Miller, I apologize, I'm going to ask you what seems like a mean question, but you don't know what kind of treatment he received, correct --
> A. No.
> Q. -- at Adelphoi?
> A. No.
> Q. You don't know who he saw at Adelphoi?
> A. No.
> Q. You don't know what sort of counseling took place at Adelphoi?
> A. No.
> Q. You don't know whether he was seen by any licensed psychiatrists or psychologists at Adelphoi?
> A. No.

*Id*. at 119 – 123.

19.     Regarding Decedent's treatment at Gateway from January 4, 2016 to May 4, 2016, Ms. Miller had no knowledge of the names of counselors who may have treated Decedent at that facility nor did she participate in any of the counselling sessions at Gateway.

> Q. Ms. Miller, our records reflect that Gateway -- your son was at Gateway from January 4, 2016 to May 4, 2016, which would be his second half of his junior year. Do you recall him being at Gateway for approximately 86 days --
> A. Yes.
> Q. -- in 2016?
> A. Yes.
> Q. Was that inpatient, or was that outpatient?
> A. In.
> Q. Were you allowed to be on campus with him every day?
> A. No.
> Q. Do you know what his daily routine was at Gateway?
> A. No.
> Q. Do you know the names of any of the counselors that he saw at Gateway?
> A. No.
> Q. Did you participate in any counseling sessions with your son while at Gateway?
> A. No.

*Id.* at 124 -125.

20. As the majority Court in *Octave* in its footnote 10 noted:

> Appellants argue, since appellees can contest liability through less intrusive means, e.g., an accident reconstruction or eyewitness testimony, discovery of James's mental health records should be precluded. However, this argument is based upon a faulty understanding of the less-intrusive- means analysis, which only applies when there are other, less intrusive methods of obtaining the same type of information, not simply other available means of proving one's case.

21. In a dissenting opinion in *Octave*, Justice Todd, noted as follows:

> Nevertheless, I recognize the inequity that drives the majority's analysis: it is untenable for a plaintiff to sue for relief where matters otherwise protected by Section 7111 are critical to the defense of that action, but, at the same time, expect those matters to remain confidential and expect to proceed with the suit. However, instead of running afoul of a statutory mandate in an effort to avoid such an unjust result, I would encourage that such matters be addressed in the context of discovery, in a manner such as that initiated by Appellees below.
>
> Here, Appellees filed interrogatories and sought access to information pertaining to Appellant James Octaves's mental health treatment; when Appellants objected, Appellees filed a motion to compel Appellants to provide written consent pursuant to Section 7111, detailing in the motion the relevance of that information to their defense…The trial court was then in a position to assess the significance of the information to the defense, and, had it deemed the information sufficiently material, issue an order compelling the authorizations be executed. Such an approach respects the command of Section 7111 — by ensuring that Section 7111 information is released only pursuant to written consent — but allows the trial court to fashion an appropriate discovery sanction should a plaintiff refuse to provide the consent, including dismissal of the case.
>
> See *Octave* at 1265.

22. The less intrusive method identified by this Court, namely the deposition testimony of Plaintiff, Janice Miller, per *Octave,* supra, was pursued and was unhelpful in shedding light on or establishing any knowledge of any of the information contained in the 600 plus pages of withheld documents.

23. The avenues regarding securing the information that was the subject of Heil's Motion to Compel have now been exhausted, short of compelling Plaintiff to produce the documents in question.

24. A Motion for Reconsideration may be brought pursuant to two Federal Rules of Civil Procedure, namely, F.R.Civ.P. 59 and F.R.Civ.P. 60.

25. A motion pursuant to F.R.Civ.P. 59(e) must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or, (3) the need to correct clear error of law or prevent manifest injustice. *Lazaridis v. Wehmer*, 590 F. 3d 666, 669 (3d Cir. 2010).

26. F.R.Civ.P. 60 allows the Court to "relieve a party….from a final judgment, order, or proceeding." *See* F.R.Civ.P 60(b).

27. Under F.R.Civ.P. 60, among the six (6) grounds for relieving a party from the Court's prior Order is "any other reason that justifies relief." *Id*. at 60(b)(6).

28. It is Heil's position that it is not known whether the withheld records relate or do not relate to a time period three (3) years prior to Miller's death in 2018.

29. As Heil has not been afforded the opportunity to view the withheld documents, it is not known whether the information contained in the withheld records would be of relevance to Decedent's future earning capacity or life expectancy.

30. It is not known whether the withheld records would be relevant so as to waive the privileges prohibiting the discovery of these records.

31. Pursuant to the above, Heil submits that an Order allowing for Reconsideration of its standing Memorandum and Order which denies Heil's Motion to Compel production of mental

health records withheld as privileged would prevent manifest injustice as required by F.R.Civ.P. 59(e) and is otherwise "justified" for purposes of F.R.Civ.P. 60(b)(6).

WHEREFORE, Defendant, The Heil Co., respectfully requests this Honorable Court to reconsider its Order of March 11, 2022, and grant Defendant's Motion to Compel production of mental health records withheld as privileged and compel production of the aforesaid records as requested.

Respectfully submitted,

Walter H. Swayze, III, Esquire
Attorney ID. No.: 59101
pete.swayze@lewisbrisbois.com
Michael B. Pullano, Esquire
Attorney ID No.: 79389
michael.pullano@lewisbrisbois.com
Asher A. Block, Esquire
Attorney ID. No.: 315908
asher.block@lewisbrisbois.com
550 E. Swedesford Road, Suite 270
Wayne, PA 19087
215-977-4100
Fax: 215-977-4101
*Attorneys for Defendant,*
*The Heil Co.*

Date: June 29, 2022